KAREN P. HEWITT
United States Attorney
ANDREW G. SCHOPLER
Assistant U.S. Attorney
California State Bar No. 236585
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone No.: (619) 557-5836
Facsimile No.: (619) 235-2757

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE MARIA SALCEDO,<br><br>Defendant. | Criminal Case No. 08CR0646-WQH<br><br>Date: April 18, 2008<br>Time: 1:00 p.m.<br><br>UNITED STATES' RESPONSE IN OPPOSITION TO DEFENSE MOTIONS TO:<br><br>(1) COMPEL DISCOVERY<br>(2) DISMISS INDICT. (GJ INSTR'NS)<br>(3) DISMISS INDICT. (DRUG LAWS)<br>(4) SUPPRESS STATEMENTS<br>(5) FILE FURTHER MOTIONS<br><br>TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES, AND UNITED STATES' MOTIONS FOR:<br><br>(1) RECIPROCAL DISCOVERY<br><br>AND EXPERT NOTICE RE:<br><br>(1) VALUE EXPERT<br>(2) FORENSIC CHEMIST<br>(3) MODUS OPERANDI EXPERT |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel KAREN P. HEWITT, United States Attorney, and ANDREW G. SCHOPLER, Assistant U.S. Attorney, and hereby files its response in opposition to the motions filed on behalf of defendant JOSE MARIA SALCEDO ("Defendant") and hereby files its motion for reciprocal discovery and its notice of expert witnesses, which are based upon the files and records of this case.

## I

## INTRODUCTION

Defendant stands charged with importing 33.52 kilograms of cocaine, in violation of 21 U.S.C. §§ 952 and 960, and possessing with intent to distribute 33.52 kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1).

## II

## STATEMENT OF FACTS

In the interests of preserving any efforts of Defendant to save prosecution and judicial resources in this case, the Government hereby incorporates Defendant's statement of facts by reference, for the purpose of this response only. If the case is not resolved and Defendant files motions beyond the current straightforward discovery motions, the United States will provide a more detailed statement of facts. The United States reserves the right to expand or amend the statement of facts in future filings.

## III

## POINTS AND AUTHORITIES

### A. THE UNITED STATES WILL PRODUCE REQUIRED DISCOVERY

The United States intends to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (18 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure. The Government anticipates that most discovery issues can be resolved amicably and informally, and has addressed Defendant's specific requests below.

#### (1) The Defendant's Statements

The Government recognizes its obligation under Rules 16(a)(1)(A) and 16(a)(1)(B) to provide to Defendant the substance of Defendant's oral statements and Defendant's written statements. The Government has informed Defendant of all written statements that are known to the undersigned Assistant U.S. Attorney at this date and will produce all available videotapes and/or audiotapes as soon as possible. If the Government discovers additional oral or written

statements that require disclosure under Rule 16(a)(1)(A) or Rule 16(a)(1)(B), such statements will be provided to Defendant.

The Government has no objection to the preservation of the handwritten notes taken by any of the Government's agents and officers. See United States v. Harris, 543 F.2d 1247, 1253 (9th Cir. 1976) (agents must preserve their original notes of interviews of an accused or prospective government witnesses). However, the Government objects to providing Defendant with a copy of any rough notes at this time. Rule 16(a)(1)(A) does not require disclosure of the rough notes where the content of those notes have been accurately reflected in a type-written report. See United States v. Brown, 303 F.3d 582, 590 (5th Cir. 2002); United States v. Coe, 220 F.3d 573, 583 (7th Cir. 2000) (Rule 16(a)(1)(A) does not require disclosure of an agent's notes even where there are "minor discrepancies" between the notes and a report). The Government is not required to produce rough notes pursuant to the Jencks Act, because the notes do not constitute "statements" (as defined 18 U.S.C. § 3500(e)) unless the notes (1) comprise both a substantially verbatim narrative of a witness' assertion, and (2) have been approved or adopted by the witness. United States v. Spencer, 618 F.2d 605, 606-07 (9th Cir. 1980). The rough notes in this case do not constitute "statements" in accordance with the Jencks Act. See United States v. Ramirez, 954 F.2d 1035, 1038-39 (5th Cir. 1992) (rough notes were not statements under the Jencks Act where notes were scattered and all the information contained in the notes was available in other forms). The notes are not Brady material because the notes do not present any material exculpatory information, or any evidence favorable to Defendant that is material to guilt or punishment. Brown, 303 F.3d at 595-96 (rough notes were not Brady material because the notes were neither favorable to the defense nor material to defendant's guilt or punishment); United States v. Ramos, 27 F.3d 65, 71 (3d Cir. 1994) (mere speculation that agents' rough notes contained Brady evidence was insufficient). If, during a future evidentiary hearing, certain rough notes become discoverable under Rule 16, the Jencks Act, or Brady, the notes in question will be provided to Defendant.

//

//

**(2) <u>Arrest Reports and Notes</u>**

The United States has provided Defendant with arrest reports. As noted previously, agent rough notes, if any exist, will be preserved, but they will not be produced as part of Rule 16 discovery.

**(3) <u>Brady Material</u>**

Again, the United States is well aware of and will continue to perform its duty under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and <u>United States v. Agurs</u>, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendant, however, is not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in <u>United States v. Gardner</u>, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." <u>Id.</u> at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. <u>United States v. Taylor</u>, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. <u>United States v. Gering</u>, 716 F.2d 615, 621 (9th Cir. 1983); <u>United States v. Angelini</u>, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

**(4) <u>Sentencing Information</u>**

The United States is not obligated under <u>Brady</u> to furnish a defendant with information which he already knows. <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). <u>Brady</u>

is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is premature.

**(5) Defendant's Prior Record**

The United States has provided Defendant with a copy of his criminal record in accordance with Federal Rule of Criminal Procedure 16(a)(1)(B).

**(6) Proposed 404(b) and 609(b) Evidence**

The United States will provide Defendant with official notice of its proposed use of other acts evidence, pursuant to Federal Rules of Evidence 404(b) or 609(b), and information about such acts at the time the United States' trial memorandum is filed.

**(7) Evidence Seized**

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs.

The United States, however, need not produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984), cert. denied, 474 U.S. 953 (1985).

//

//

**(8) <u>Preservation of Evidence</u>**

The United States will preserve all evidence to which Defendant is entitled pursuant to the relevant discovery rules. However, the United States objects to any blanket request to preserve all physical evidence.

The United States has complied and will continue to comply with Rule 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within his possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or are intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant, including photographs. The United States has made the evidence available to Defendant and Defendant's investigators and will comply with any request for inspection.

Again, the United States will continue to comply with its obligations pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

**(9) <u>Law Enforcement Personnel Files – *Henthorn* Material</u>**

The United States will continue to comply with its obligations pursuant to <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).

**(10) <u>Tangible Objects</u>**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government need not, however, produce rebuttal evidence in advance of trial. <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

**(11) <u>Expert Summaries</u>**

The Government will comply with Rule 16(a)(1)(G) and provide Defendant with a written summary of any expert testimony that the Government intends to use under Rules 702, 703, or 705

of the Federal Rules of Evidence during its case-in-chief at trial. This summary shall include the expert witnesses' qualifications, the expert witnesses opinions, the bases, and reasons for those opinions. The United States has provided its expert notice below and has provided (or will provide) resumes and reports in discovery.

**(12) Impeachment Evidence**

As stated previously, the United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

**(13) Criminal Investigation of Government Witness**

Defendants are not entitled to any evidence that a prospective witness is under criminal investigation by federal, state, or local authorities. "[T]he criminal records of such [Government] witnesses are not discoverable." United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976); United States v. Riley, 657 F.2d 1377, 1389 (8th Cir. 1981) (holding that since criminal records of prosecution witnesses are not discoverable under Rule 16, rap sheets are not either); cf. United States v. Rinn, 586 F.2d 113, 118-19 (9th Cir. 1978) (noting in dicta that "[i]t has been said that the Government has no discovery obligation under Fed. R. Crim. P. 16(a)(1)(C) to supply a defendant with the criminal records of the Government's intended witnesses.") (citing Taylor, 542 F.2d at 1026).

The Government will, however, provide the conviction record, if any, which could be used to impeach witnesses the Government intends to call in its case-in-chief. When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

**(14) Evidence of Bias or Motive to Lie**

The United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

//

**(15) Evidence of Perception, Recollection, Communication, Truth-Telling**

The United States is unaware of any evidence indicating that a prospective witness has a problem with perception, recollection, communication, or truth-telling.

**(16) Witness Addresses**

The Government has already provided Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective Government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)); United States v. Hicks, 103 F.23d 837, 841 (9th Cir. 1996). Nevertheless, in its trial memorandum, the Government will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

The Government objects to any request that the Government provide a list of every witness to the crimes charged who will not be called as a Government witness. "There is no statutory basis for granting such broad requests," and a request for the names and addresses of witnesses who will not be called at trial "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Hsin-Yung, 97 F. Supp.2d 24, 36 (D. D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)). The Government is not required to produce all possible information and evidence regarding any speculative defense claimed by Defendant. Wood v. Bartholomew, 516 U.S. 1, 6-8 (1995) (per curiam) (holding that inadmissible materials that are not likely to lead to the discovery of admissible exculpatory evidence are not subject to disclosure under Brady).

**(17) Witnesses Favorable to the Defendant**

As stated earlier, the Government will continue to comply with its obligations under Brady and its progeny. At the present time, the Government is not aware of any witnesses who have made an arguably favorable statements concerning Defendant or who could not identify him or who were unsure of his identity or participation in the crime charged.

**(18) Statements Relevant to the Defense**

To reiterate, the United States will comply with all of its discovery obligations. However, "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Gardner, 611 F.2d at 774-775 (citation omitted).

**(19) Jencks Act Material**

The Jencks Act, 18 U.S.C. § 3500, requires that, after a Government witness has testified on direct examination, the Government must give the Defendant any "statement" (as defined by the Jencks Act) in the Government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b). A "statement" under the Jencks Act is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. 18 U.S.C. § 3500(e). If notes are read back to a witness to see whether or not the government agent correctly understood what the witness was saying, that act constitutes "adoption by the witness" for purposes of the Jencks Act. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). While the Government is only required to produce all Jencks Act material after the witness testifies, the Government plans to provide most (if not all) Jencks Act material well in advance of trial to avoid any needless delays.

**(20) Giglio Information**

As stated previously, the United States will comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act, United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and Giglio v. United States, 405 U.S. 150 (1972).

**(21) Agreements Between the Government and Witnesses**

The Government has not made or attempted to make any agreements with prospective Government witnesses for any type of compensation for their cooperation or testimony.

//

**(22) Informants and Cooperating Witnesses**

If the Government determines that there is a confidential informant in this case and that the informant's identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause," the Government will either disclose the identity of the informant or submit the informant's identity to the Court for an in-chambers inspection. Roviaro v. United States, 353 U.S. 53, 60-61 (1957); United States v. Ramirez-Rangel, 103 F.3d 1501, 1505 (9th Cir. 1997) (same).

**(23) Bias by Informants or Cooperating Witnesses**

As stated above, the United States is unaware of any evidence indicating that a prospective witness is biased or prejudiced against Defendant. The United States is also unaware of any evidence that prospective witnesses have a motive to falsify or distort testimony.

**(24) Law Enforcement Personnel Files**

The United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

**(25) Training Manuals and Policies of Relevant Law Enforcement Agencies**

The United States objects to any defense request for discovery of policies, instructions and training manuals regarding the interrogation of subjects.

**(26) Performance Goals and Policy Awards**

The United States objects to any request for disclosure of performance goals and policy awards with respect to the detection and interruption of criminal operations.

**(27) Opportunity to Weigh , Count, View and Photograph Evidence**

The Government has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all tangible objects seized that is within its possession, custody, or control, and that is either material to the preparation of Defendant's defense, or is intended for use by the Government as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendant. The Government

need not, however, produce rebuttal evidence in advance of trial. United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

**(28) Scientific Tests or Examinations**

The Government will comply with its obligations under Rule 16(a)(1)(F) with respect to examinations or scientific tests.

**(29) Residual Request**

The Government has already complied with Defendant's request for prompt compliance with its discovery obligations. The Government will comply with all of its discovery obligations, but objects to any broad and unspecified residual discovery request.

**B. THE GRAND JURY INSTRUCTIONS WERE NOT FAULTY, AND THE INDICTMENT SHOULD NOT BE DISMISSED**

Defendant again challenges Judge Larry Alan Burns' instructions to the grand jury in January 2007. Since the Court is very familiar with this argument, which has been raised (and rejected) repeatedly in the Southern District of California over recent months, the United States will simply urge this Court to adopt the reasoning in the attached Orders by Judge Moskowitz and Judge Houston, which both deny a motion to dismiss the indictment premised on identical defense arguments. See Judge Moskowitz Order, attached as Appendix 3; Judge Houston Amended Order, attached as Appendix 4. In the interests of a complete appellate record, the United States is also attaching in their entirety, for the Court's consideration, the grand jury instructions and grand jury voir dire. See Transcript of Grand Jury Instructions, attached as Appendix 1; Transcript of Grand Jury Voir Dire, attached as Appendix 2.

If the Court desires further briefing on this subject, the United States will be happy to supplement its filing.

**C. THE DRUG IMPORTATION STATUTES ARE CONSTITUTIONAL**

Defendant advances the familiar theory that the drug importation statutes violate the Fifth and Sixth Amendments under Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004), because the drug importation statutes do not require a jury to find the type and quantity of the controlled substance. Defendant argues that the Supreme Court's

decision in Harris v. United States, 536 U.S. 545 (2002), undermines the analysis employed by the Ninth Circuit in United States v. Buckland, 289 F.3d 558, 564 (9th Cir. 2002) (en banc) (upholding constitutionality of 21 U.S.C. § 841), and United States v. Mendoza-Paz, 286 F.3d 1104 (9th Cir. 2002) (upholding constitutionality of 21 U.S.C. § 960).

The Ninth Circuit has foreclosed this argument. United States v. Navarro-Vargas, 408 F.3d 1184, 1209 (9th Cir. 2005) (Sections 841 and 960 are constitutional, even in light of Harris).

**D. THE GRAND JURY DID NOT NEED TO FIND DEFENDANT'S KNOWLEDGE OF THE EXACT TYPE AND QUANTITY OF NARCOTICS**

Defendant next argues that the indictment is defective because it fails to require a finding of Defendant's knowledge of the exact type and quantity of drugs. As discussed above, these are not required elements of the offense, and therefore they need not be alleged in the Indictment.

**E. THE MOTION TO SUPPRESS SHOULD BE SUMMARILY DENIED**

Defendant failed to file a declaration or affidavit, and therefore has failed to adduce any evidence that would create a factual dispute that could be resolved by an evidentiary hearing with respect to the motion to suppress statements. Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements); Crim. L.R. 47.1g(1) (stating that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s). . . . The Court need not grant an evidentiary hearing where either party fails to properly support its motion for opposition.").

As such, this Court should deny the motion to suppress statements.

**F. IN ANY EVENT, DEFENDANT'S POST-ARREST STATEMENTS WERE INITIATED BY HIM AND NOT THE RESULT OF CUSTODIAL INTERROGATION**

Defendant was Mirandized at 5:40 p.m. on February 22, 2008 (less than 5 hours after his initial entry into the United States) and he invoked his right to remain silent. The agents asked him no substantive questions and terminated the interview at 5:44 p.m.

During a search of Defendant's belongings, agents found $15 (one $10 bill and a $5 bill) in his pants pocket and $820 (forty-one $20 bills) in his wallet. Special Agent ("SA") Rafael Silva informed Defendant that the $820 would be seized, and Defendant shrugged his shoulders and nodded his head, but did not become upset. Later, while SA Russell Vensk was transporting Defendant to Imperial County Jail ("ICJ"), Defendant asked him about the $15 that had been taken from his pants pocket. SA Vensk told him that the $15 would be given to ICJ and placed into an account for him, but that the $820 that was seized from Defendant's wallet would not be returned. Defendant replied that "he did not care about that money and again did not protest or become upset."

A defendant who asserts the right to counsel "is not subject to further interrogation by the authorities until counsel has been made available to him, <u>unless the accused himself initiates further communication, exchanges, or conversations with the police</u>." <u>Edwards v. Arizona</u>, 451 U.S. 477, 484-85 (1981) (emphasis added). Re-initiation occurs when the accused "evince[s] a willingness and a desire for a generalized discussion about the investigation." <u>Oregon v. Bradshaw</u>, 462 U.S. 1039, 1045-46 (1983) (plurality) ("Although ambiguous, the respondent's question in this case as to what was going to happen to him evinced a willingness and a desire for a generalized discussion about the investigation; it was not merely a necessary inquiry arising out of the incidents of the custodial relationship.").

Here Defendant initiated the conversation with SA Vensk (after having been previously Mirandized), and SA Vensk simply responded with the factual answers to his query. Defendant's response that "he did not care about that money" was entirely volunteered, and not the subject of custodial interrogation. Thus, the statement is admissible.

**G. NO OPPOSITION TO LEAVE TO FILE FURTHER MOTIONS**

The Government does not oppose granting leave to file further motions, so long as any new motions are based on new discovery and the order applies equally to both parties.

**IV**

**UNITED STATES' MOTION FOR RECIPROCAL DISCOVERY**

**A. ALL EVIDENCE FOR DEFENDANT'S CASE-IN-CHIEF**

Since the Government will honor Defendant's request for disclosure under Rule 16(a)(1)(E), the Government is entitled to reciprocal discovery under Rule 16(b)(1). Pursuant to Rule 16(b)(1), the United States requests that Defendant permit the Government to inspect, copy and photograph any and all books, papers, documents, photographs, tangible objects, or make copies or portions thereof, which are within the possession, custody, or control of Defendant and which Defendant intends to introduce as evidence in his case-in-chief at trial.

The Government further requests that it be permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, which are in the possession and control of Defendant, which he intends to introduce as evidence-in-chief at the trial, or which were prepared by a witness whom Defendant intends to call as a witness. The Government also requests that the Court make such order as it deems necessary under Rules 16(d)(1) and (2) to ensure that the Government receives the reciprocal discovery to which it is entitled.

**B. RECIPROCAL JENCKS—DEFENSE WITNESS STATEMENTS**

Rule 26.2 provides for the reciprocal production of Jencks material. Rule 26.2 requires production of the prior statements of all witnesses, except a statement made by Defendant. The time frame established by Rule 26.2 requires the statements to be provided to the Government after the witness has testified. However, to expedite trial proceedings, the Government hereby requests that Defendant be ordered to provide all prior statements of defense witnesses by a reasonable date before trial to be set by the Court. Such an order should include any form in which these

statements are memorialized, including but not limited to, tape recordings, handwritten or typed notes and reports.

**V**

**UNITED STATES' EXPERT NOTICE**

Pursuant to Federal Rule of Evidence 16(a)(1)(G), the United States hereby provides the defense notice and a written summary of testimony the United States intends to use, pursuant to Federal Rules of Evidence 702, 703 and 705, during the trial in the above-referenced case.

**A. VALUE EXPERT**

**(1) Opinions**

The United States intends to call a value expert (the "value expert") as an expert witness on the wholesale and retail values in Mexico and in the United States of the controlled substance charged in the indictment. The value expert will also testify that the amount of controlled substance in this case is an amount for distribution and not for personal use. The value expert will testify that controlled substances are more expensive as they move farther away from the border region. The value expert will testify that, based upon the expert's training and experience, this is because the drivers have the critical responsibility of passing by law enforcement officials who are trained to detect persons transporting such loads.

A copy of the value chart generated by the value expert, which lists prices for the controlled substance in Mexico and the United States, has been disclosed in discovery.

**(2) Bases and Reasons for Opinions**

The testimony of the value expert will based on the expert's education, experience and training, including formalized and on-the-job training. The expert's opinions will be based on the following: cases the expert has personally investigated; cases in which the expert has assisted in the investigation; arrests in which the expert has been involved; interviews with informants and suspected smugglers; contact with undercover agents and operations; ongoing communication with fellow agents and other law enforcement personnel; information obtained from other shared

intelligence; literature and publications reviewed; seminars and courses dealing with the drug trade; and formal training from the academy.

**(3) Qualifications**

A copy of the value expert's curriculum vitae has been made (or will soon be made) available to defense counsel in discovery.

**B. FORENSIC CHEMIST**

**(1) Opinions**

The United States intends to call a DEA Chemist (the "forensic chemist" or the "chemist") as an expert forensic chemist to testify that the substance seized in this case is the controlled substance charged in the indictment. The forensic chemist has analyzed the substance and will testify as to the consistency and purity of the contraband sampled and to the positive test for the presence of the controlled substance. The forensic chemist will describe the process used to analyze the substance, including the receipt and handling thereof. The chemist will offer an expert opinion that the core sample tested is, in fact, the controlled substance charged in the indictment.

**(2) Bases and Reasons for Opinion**

The chemist's opinion will be based on the chemist's analysis in this case, along with the chemist's background, education, training, experience, and knowledge and use of accepted scientific methods of testing.

**(3) Qualifications**

A copy of the forensic chemist's curriculum vitae has been made (or will soon be made) available to defense counsel in discovery. The Form DEA-7 and any other laboratory reports concerning the controlled substance have also been produced in discovery.

**C. DRUG COURIER *MODUS OPERANDI* EXPERT**

**(1) Opinions**

The United States intends to call an expert (the "M.O. expert" or the "expert") as an expert witness on the modus operandi of drug couriers. The M.O. expert will testify, based upon the expert's training, experience and specialized knowledge, that: (1) drug traffickers typically do not

entrust large amounts of drugs or money to unknowing couriers; and (2) couriers do not typically participate in the loading or unloading of narcotics

**(2) <u>Bases and Reasons for Opinions</u>**

The testimony of the M.O. expert will based on the expert's education, experience, specialized knowledge and training, including formalized and on-the-job training. The expert's opinions will be based on the following: cases the expert has personally investigated; cases in which the expert has assisted in the investigation; arrests in which the expert has been involved; interviews with informants and suspected smugglers; contact with undercover agents and operations; ongoing communication with fellow agents and other law enforcement personnel; information obtained from other shared intelligence; literature and publications reviewed; seminars and courses dealing with the drug trade; and formal training from the academy.

**(3) <u>Qualifications</u>**

A copy of the M.O. expert's curriculum vitae has been made (or will soon be made) available to defense counsel in discovery.

**D. <u>RECIPROCAL EXPERT DISCOVERY</u>**

Pursuant to Federal Rule of Criminal Procedure 16(b)(1)(C), the United States hereby requests a similar written summary regarding experts Defendant intends to call at trial.

**VI**

**<u>CONCLUSION</u>**

For the foregoing reasons, the United States requests that the Court deny Defendant's motions, except where unopposed, and grant the United States' motions for reciprocal discovery and for fingerprint exemplars.

DATED: March 30, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ Andrew G. Schopler
ANDREW G. SCHOPLER
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE MARIA SALCEDO,<br>Defendant. | Criminal Case No. 08CR0646-WQH<br><br>CERTIFICATE OF SERVICE |

IT IS HEREBY CERTIFIED THAT:

I, ANDREW G. SCHOPLER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS; UNITED STATES' MOTIONS FOR RECIPROCAL DISCOVERY; and UNITED STATES' EXPERT NOTICE** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. John C. Ellis, Jr.

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

N/A

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 30, 2008

/s/ *Andrew G. Schopler*
ANDREW G. SCHOPLER
Assistant United States Attorney